Counsel for Appellant Robert Beier. Mr. Beier. Good morning, Your Honors, and may it please the Court. I'm Robert Beier, and I represent the appellants Sheldon Adelson and Las Vegas Sands Corporation. With the Court's permission, we'd like to reserve three minutes for rebuttal. Yes, sir. The issue presented in this case is one analysis as the District Court requires the District Court to review the application of Kate O'Keeffe. It's the first decision the District Court has made to the Court, and it's the first decision the District Court has tried to make in exercising its discretion under 28 U.S. Code Section 1782. Although the Supreme Court in the Intel case held that comity, as well as parity, is an important touchstone for the exercise of discretion, and specifically designated as part of the discretionary consideration whether the resort to Section 1782 was part of an effort to circumvent limitations under the law of the foreign jurisdiction where the action was proceeding, the District Court here failed to give due consideration to the question of whether the failure to resort to process under Hong Kong law that was available under the law of that forum, according to the affidavit of counsel submitted by the appellate. On that point, is Kirk Thorell, if I'm pronouncing it correctly, is the subject of the requested deposition? Is he within reach of Hong Kong's law? To my knowledge, he would not be. I believe that he would be subject to jurisdiction in the Eastern District of Pennsylvania. If that's the case, then Ms. O'Keeffe really wouldn't have much of a defense in the defamation case. Well, Ms. O'Keeffe could have requested the Hong Kong court to proceed by letter rogatory, either under Section 1782 or under the Hague Act. Isn't there an order in the statute that says you can do that, but you don't have to do that? It's not required, and the Supreme Court in Intel expressly refused to set up categorical limitations. However, it left it to the discretion of courts, and in outlining that discretion, it's not open-ended. Where's the abuse of discretion here? The abuse of discretion here is twofold, in our view. First, failing to give appropriate consideration to the concept of comity, in effect placing the burden of proof on the appellant to submit authoritative evidence in the form of affidavits. And here, because the affidavits were in conflict, the district court said that there was no authoritative evidence on the issue of what the forum procedures were. The district judge's decision doesn't change the burden of proof in Hong Kong. It has no effect on it at all. The district court would not alter the burden of proof in Hong Kong, but the question is, how does the district court here exercise its discretion? What factors does it look at? Does it put the onus on the party resisting discovery? Or does it put the onus on the party who is seeking discovery to provide some reason justifying the exercise of district court discretion in the United States? This is a motion to quash, right? So who has the burden on the motion to quash? Well, it's an interesting question, Judge Risparo. This court, in the Baer case, indicated that under such circumstances, the burden would be on the party resisting discovery. Baer was before Intel. Intel did not speak to the question of relative burdens. On the other hand, this was an ex parte proceeding, and it is questionable whether an ex parte proceeding, number one, even assuming that courts appropriately should entertain those in a situation where there was no urgency, there was no emergency, no reason why there could not have been notice and an opportunity to be heard before the court approved the issuance of the subpoena, but the application was made on an ex parte basis. It was entertained on an ex parte basis. It's fairly common for these things. I assume you've done these before. I have not, but I grant that it is common as I read the cases that they come up that way. I wonder whether it is appropriate. That's not an issue that has been raised directly in this case, but I believe that it plays into this question of did the district court conduct the required analysis so that this court can ascertain that it in fact exercised the required discretion in permitting the discovery to go forward. Under Intel, what did the district court not do that it should have done? Are you suggesting we need to add a step here? Well, I think that under Intel, what the court should have considered is whether there was an effort to end run procedures in Hong Kong by engaging in discovery that a Hong Kong court would not countenance on issues that a Hong Kong court would find to be irrelevant to the claim. But the Hong Kong court could just as readily disregard whatever discovery is disclosed. It could be a discovery directed toward an auditor that's a confidential relationship under United States law. Well, that can be cured by privilege documents or a privilege application. But it is still an intrusive inquiry. For example, if we look at the nature... Can I ask you, isn't that for the target of the deposition to set up? Isn't that an application that Mr. Thurow would make? Well, no, because Mr. Abelson and the corporation, Las Vegas Sands Corporation, would be the one that has the right of confidentiality with respect to that relationship. And the question of relevance here I think can be illustrated very easily by taking into account if you're looking for communications that would have a bearing, apart from the dispute over what substantive law is in Hong Kong on this issue, if we're looking strictly on federal standards, does conduct have a bearing on the question of truth as a defense? What somebody says in a private communication, in a confidential relationship, over a large time period, there is no time constraint on this subpoena. You're not suggesting there's a privilege here, right? We're not suggesting a privilege. But we are suggesting that under the question of discretion, that the court should have considered whether to defer to the Hong Kong court to make a decision in the first instance by requesting a letter of mandatory if the Hong Kong court determines that there could be relevance to what was said in private, confidential communications to the question of whether... But our borrowed money doesn't require that, though. There's an or. And as Judge Flint has rightly pointed out, if there's a problem with relevancy or some other evidentiary issue that we're not aware of, couldn't the Hong Kong court deal with it in the first instance? The Hong Kong court could deal with it in the first instance, but that's what we're suggesting as well, that the Hong Kong court could deal with that in the question of whether to permit the parties to proceed. This is discovery in a case that's pending in Hong Kong. If you say that you're challenging the district court's discretion... You should be reviewing for an abuse of discretion, which is a very, very high standard. Why is it an abuse of discretion to let the Hong Kong court determine the admissibility of any aspect of a deposition? Well, we're suggesting that the determination would be not just limited to admissibility, and there's case law that suggests that admissibility is not the touchstone here. The question is, would the Hong Kong court permit the factual inquiry to be made at all, forgetting about what is admissible at trial? Wait a minute. You want the district court to anticipate how the Hong Kong court would rule on the admissibility of... No, Your Honor. We want the district court, and we believe that the proper result here is for the district court to allow the parties to proceed with a request in Hong Kong for a letter of inventory If the Hong Kong court determines that this evidence would be helpful to the Hong Kong court in the determination of the issues that are germane to that case, then the Hong Kong court can make that request through a letter of inventory that can be taken to the district court, and the subpoena would be issued, and we wouldn't be here. So you're suggesting that this is sort of an overlay to what's in the law. You're suggesting a new legal rule. Not really a new legal rule, Your Honor. Just a question of discretion. Well, it tells me that it will be the main rule that comes out of this case, if you were writing the opinion. That you should go try to get letters of regulatory? Isn't that against the statute? It's not against the statute. It's within the discretion of the district court to permit that. It's adding an extra step, though, right? It would be adding an extra discretionary step in a situation where the... It's a discretionary step. Discretionary step in a situation where there is a dispute in the affidavit with respect to what the foreign law provides, where the plaintiff's own, the applicant's own affidavit establishes that there are procedures available in Hong Kong that a Hong Kong court could exercise in order to request a U.S. court to assist in the obtaining of this evidence, and that where there's a dispute in the communications issue, that it's to be discovered over a confidential nature, you're inquiring into private communications in the context of a confidential relationship, a private relationship, trying to uncover evidence that if somebody used a stray word, that somehow that is relevant to show... Well, if we just go back to what we were talking about, aren't you really asking us to write or out of the statute? You want to take discretion away from the court. Actually, we're suggesting that the court should have engaged in a more in-depth consideration. I think that Judge Sleet summed up this issue of discretion very well in his decision in In Re Gilead, where he said, we don't require that parties resort to process under the law of the forum, but it is relevant to inquire why they have not done so, and that was a factor that Judge Sleet in the Gilead case, which was decided last year, expressly took into account following decisions of other district courts that have said it is appropriate under certain circumstances as a matter of discretion to inquire why the process under the forum law was not followed. You're not suggesting that the district court determined the admissibility of evidence? We're not suggesting that at all. We're suggesting that it deferred to Hong Kong on that issue, and deferred to Hong Kong on the question of whether this inquiry would be helpful from a factual standpoint in the Hong Kong proceedings. The Hong Kong court is... Can't Hong Kong do that once they have a copy of the deposition? They could, but that's after permitting an intrusive inquiry. I mean, if you look at the subpoena and you look at the nature of the broad discovery request, the use of certain types of language, and completely the laundry list of terms that I was not presiding over... That's not what I've been objected to either, though, except by you. You're a third party. Well, it's our communications that are at issue. I think we have that standing. Is this a rule to be applied in every case? You defer to the foreign jurisdiction, or is this just a specialized case? This is a... I think discretion has to be determined in this context on a case-by-case basis, and we're not asking for a general rule. We're asking for the court to look at the circumstances here, and to apply a rule of discretion. It's similar to what the court did in the Southern District of Florida, although that was based on just this relevance component, but... Wasn't that relationship much more attenuated in time? This relationship has no time limit. It was a longstanding, modern relationship. The architect in Florida you're referring to was 30 years ago, wasn't it? Twenty-three years ago for a period of several months, but this relationship with the auditor goes back a number of years, and there is no time limit, no time dimension to this subpoena. Thank you. Thank you, sir. Ms. Handman. Good morning, Your Honors. My name is Laura Handman, Davis' right to remain. I represent, I believe, Kate O'Keefe, and it is hard to conceive of a case more of a textbook perfect example of what 1782 is meant to address than this one. In this court, I anticipated many of the questions that Your Honors have raised today. Indeed, in the Bair case, it was very clearly that the burden of proving facts to demonstrate denial of the application is on the party that is opposing the application. Because I understand that you could not get these documents or you cannot take this deposition in Hong Kong. Is that accurate? That is correct, and the appellant has conceded that, and that's what makes this case... But, of course, if that's the case, if you can't get it there, why should you be able to get it in a district court in New Jersey? Well, I strike that there's issues of discoverability, and this court has said in the Bair case and the Intel case adopted it that the discoverability of a case under foreign law is not a requirement under 1782. Indeed, this whole exercise of the battle of experts is exactly what courts have warned against, and Justice Ginsburg in Intel said it's slippery business, and Judge Greenaway, when he was on the district court, resisted the effort to engage in investigation of foreign law on these kinds of issues. We believe it is discoverable in Hong Kong, but because these are non-parties who are based here and are not available and subject to the tribunal in Hong Kong, we could not get the evidence in Hong Kong. The issue of privilege between the target of the deposition and Mr. Adelson. Well, as Your Honor noted, there is no auditor-client privilege, but even we recognize that there could be confidential communications and trade secrets and proprietary information, and we have specifically, first of all, narrowed the subpoena to be only about foul mouth. The issue that Mr. Adelson has put directly in suit, and if you recall, the reason for Mr. Thurow's deposition is that Price Waterhouse Cooper did have this account for 25 years. They resigned it in 2013, very close, and the article was 2012, and they resigned it for among the reasons personal tensions and the challenging demeanor of Mr. Adelson. What do we make of the expert issue? In other words, counsel in his papers argue strongly that your expert is very compromised and that your expert is counseling overseas. What do we make of that? Well, first of all, we're talking about lawyers talking about foreign law, a subject that the courts take... I understand that, but the fact that there's a close relationship between your expert and our client here. Well, first of all, we don't think the inquiry between the experts is one that this court or the court below needed to wade into because of the fact that the non-admissibility and the non-discovery are not issues that are prerequisites for 1782, and courts have warned against that. We also think that just because she's a lawyer for this case and therefore actually knows what's going on in this case and her declaration was primarily addressing what was the status of this case and the availability to amend defenses and things like that. But putting that aside, it doesn't mean you disregard it. It means that you give way to it, but then you give way to the other. And in the universal athletic case that the appellants rely on, the Third Circuit case, was totally different. That was an associate who lacked expert qualifications to testify as to the critical issue in the case, the validity of a patent. That's quite different than lawyers talking about foreign law that would be applicable. Again, I return to the fact that I don't believe this court needs to wade into what Justice Ginsburg called the slippery business of comparing foreign law. And in the Jibriyat case that Mr. Beyer referenced, that was a case where it did involve participants in the tribunal. The evidence was being sought from participants in the tribunal, unlike here. And the kinds of instances where circumvention has been found are specifically where, for example, one Brazilian company is suing Dow Chemicals, a Brazilian subsidiary. They choose as the Brazilian forum. And then it goes to seek evidence from Dow Chemical here that would have been available in the tribunal through the foreign subsidiary that was before the tribunal. May I ask you a question? Under Inchel, a district court can consider the character of the proceedings abroad and receptivity to what is done in the local jurisdiction. What is the evidence, if any, that Hong Kong would be receptive to the deposition that is sought here? I'm glad you asked, Your Honor. The appellants have the burden of coming forward with authoritative proof. And the authoritative proof that courts like the Second Circuit have described are judicial, legislative, or executive orders that would indicate they're not receptive not to this specific discovery, but to You can help me understand it a little bit better. But if you could not seek this information in Hong Kong, how would the Hong Kong court be receptive to it? No, I don't think the answer is that we will not be able to get it in Hong Kong. You'd have to go through the letters of regulatory process in order to get it in Hong Kong, which is this two-step process that is antithetical to what this court has said, that there is no quasi-exhaustion requirement in 1782. And, indeed, in the Bayer case, this court specifically said in response to the inquiry, well, why don't you go to the Spanish court and get a ruling on the materiality of this evidence and avoid this whole problem? And the court said, no, you don't have to do that. There's no quasi-exhaustion requirement making you go back. In your Mecca case in the Second Circuit, didn't they suggest without a clear directive, we should be informed by the sort of statutory purposes of the statute, which are, you know, helping foreign tribunals and all? Correct. Are you suggesting we adopt that standard? Yes, and, Your Honor, Judge Martini correctly pointed out that Hong Kong is a signatory to the Hague Convention. That has been found to be evidence of receptivity to foreign discovery sufficient to satisfy the Intel criteria. And, indeed, the Second Circuit and other federal courts have granted 1782 applications for use of discovery in Hong Kong proceedings. So this is not a newfangled thing. Hong Kong has received discovery under 1782 Hong Kong proceedings. What does the Hague Convention's being signatories to the Hague Convention have here? Evidence is, according to Judge Greenway when he was on the district court and Judge Martini, that Hong Kong is open to foreign discovery and receiving foreign discovery, and that's the treaty, that's the process, and that's the kind of absence. That would be, perhaps, authoritative proof that they aren't, but they are. And that's what makes the evidence, and that was convincing to Judge Martini. It would not be abuse of discretion to rely on that. And I think as to the request, we are comfortable with redaction of any confidential information. That was what Magistrate Falk said. You don't quash the subpoena. We exercise those typical devices of redaction or protective order. And indeed, yes, the initial application was granted on an ex parte basis, but Magistrate Judge Falk gave Mr. Adelson and the SANS the opportunity to object and come in, and we had a long hearing, Mr. Kozlov and I, before Magistrate Falk, and it was thoroughly briefed. And so this was not just an ex parte ruling. This was a very thoughtful decision that Magistrate Falk entered, which Judge Martini found was not an abuse of discretion. Do you know if there have been any other cases where Hong Kong has been met with similar application, in other words, a deposition taken in a foreign country, that is then submitted in a Hong Kong court, whether the courts in Hong Kong would be receptive to such evidence? Well, first of all, Hong Kong law itself is evolving, and I think even... Well, I understand that, but I'm thinking of what I think it was Mr. Byers said concerning an abuse of discretion. I think it probably would be an abuse of discretion if a Hong Kong court would never accept this type of evidence, and nonetheless, it allowed a deposition to be taken. Your Honor, as I mentioned, the Second Circuit in the Essex case, that was a state dispute of some sort in Hong Kong, and they took evidence here, and it was delivered to the Hong Kong court. And what I think has been discussed in both the affidavits is that indeed Hong Kong law, there is now discovery available under Hong Kong law. And the deposition, of course, would be videotaped. Mr. Adelson's lawyers would cross-examine the witness. We would have asked the magistrate... I thought you might say, let's not worry about Hong Kong. Let Hong Kong do what Hong Kong does. The question is whether this statute allows you to take this deposition. Well, Your Honor, I believe that this statute and the liberal intent behind it, which is what both this court and Intel has stressed, is to allow the use of discovery here, and absent some early authoritative hints that it would not be used, not in the specific, but in general, that the common concerns are reflected in the four Intel factors that all four courts that have considered our applications have found all four factors are favoring Ms. O'Keefe. Those are the common considerations that were articulated by the Supreme Court. Can I ask you a question? It's a more analytical one, how we go about analyzing this. Your adversary brought up, and I'm sure it's not an uncommon argument, that there's a fishing expedition going on here. How do we analyze that? Do we analyze that through the Intel factors, and maybe it's Intel factor four, or is that a wholly separate analysis? Well, Intel factor four is unruly, burdensome, or harassing, and as Your Honors have pointed out, the subject of the subpoena has not objected, and he would be the party that would normally raise the unruly, burdensome issue. Fishing expedition, I think some courts have looked at, is it in bad faith? And here where Mr. Thorell has resigned a very lucrative 25-year engagement. I'm actually not asking about the fact. I'm asking how we analyze it. Is that part of the Intel factors, or is that something sort of an extra consideration that was brought up? I think it's an extra consideration, and I think it's governed by the intent of the 1780 term, which is to allow for discovery to recognize that the Hong Kong court ultimately will be the decider as to whether this evidence is admissible or not. So like a normal situation where you're sitting under Rule 26 or Rule 45 and deciding here ultimately Hong Kong will make the decision whether it's admissible, and this court has said non-admissibility is not a criteria to deny. It's not a condition for denying 1780. Could abusiveness be one? I mean, we may get a case that may not be this one, but we may get a case where we think it's just a plain old abuse. Don't courts have discretion to quash a subpoena in those circumstances? I think if it's really truly in bad faith, I think Judge Ginsburg and Intel have worked to determine whether it's contextual. You know, that's the kind of extraordinary situation where you would obviously not allow the court to be used for that purpose. Is that, by the way, what happened in Florida? No. You didn't make an application there that was denied. It was, and we have objections that are pending, and we disagree profoundly with the decision there because he would talk with me about Mr. Adelson has put in issue the term foul-mouthed. It was in the context of writing about two litigations here between him and Mr. Jacobs, one a wrongful termination brought by Mr. Jacobs in Nevada, the other one a libel suit that Mr. Adelson then brought against Mr. Jacobs in Florida, and in talking about the two men, the author said, Mr. Adelson is a scrappy foul-mouthed billionaire from working-class Dorchester. Mr. Adelson decided to put foul-mouthed in issue, and that is what we're litigating here. We didn't choose to be sued. We didn't choose to be sued in Hong Kong. Many of the cases where, for example, the Brazilian case where, you know, the parties are in Brazil where the plaintiff has chosen the foreign forum and then comes here. Here, Ms. O'Keefe did not choose this forum, and all the evidence is here in the U.S. because Mr. Adelson lives and works in the U.S., so the people who have interacted with him are indeed in the U.S. Okay, just to clarify what Judge Frentes asked, you said we objected to the opinion. Correct. Does that mean it's on appeal? Yes. Okay. It is, and the reason why, yes, it was. So the question is not is he foul-mouthed on any particular occasion, not was he foul-mouthed last year. It doesn't have a tendency to be foul-mouthed. So this gentleman was an architect in a professional context. He's in his 50s. So was Mr. Adelson at the time, and he said that, yes, indeed, he was foul-mouthed. And so in that context, we think it's foul-mouthed. Just to finish up, Ms. Hannon. Sure. And for that reason, we have objected. And I will say that the magistrate judge in Florida, who said that that evidence was to all the lineage, specifically distinguished the Farrell case and said, well, that's much more recent, that's more of a sustained relationship, and that would not be a so-called fishing expedition. Okay. Thank you, Ms. Hannon. Thank you very much. Mr. Byer on rebuttal. Thank you, Your Honors. We agree that the Hague Convention does have relevance here, but the Hague Convention, of course, is a two-step process. It requires application to the court in Hong Kong, and then the court in Hong Kong would make the determination whether to approve that application, and then the request is sent to the United States. That is the type of proceeding that we are suggesting as a matter of discretion under the circumstances of this case, particularly with the convening. It's not enough that both countries are signatories? It's not enough. There has to be a two-step process, as I understand the way that works. There has to be a request made to an authority in Hong Kong that would then issue the request to a central authority in the United States. So what makes this case so unique that you asked that? Because we are dealing with, again, a confidential relationship with an auditor. But isn't the issue at the end of the day whether he's foul-mouthed? Is that confidential? Well, the question of whether he's foul-mouthed is a question to be determined. What's relevant to that determination is whether that's a defamation under Hong Kong law, because it's Hong Kong law that's going to control that issue. The affidavits that have been filed in this case are in conflict as to how relevance would be determined, what the state of mind was, what type of conduct would be necessary to establish this defense that the applicants here are attempting to establish. This is why, again, particularly when we're dealing with the overlay of an auditor relationship with a public company which is governed by Sarbanes-Oxley, the question becomes should the district court, as a matter of discretion, have deferred that point to Hong Kong rather than to rely on this concept of authoritative proof, which comes out of the Eurometha case, which was decided 10 years before Intel. Could you go back and tell me exactly how the district judge in this case abused its discretion, I should say? By failing to give appropriate credence to the issue of comity as a touchstone for the exercise of discretion, instead insisting upon authoritative proof in the form of affidavits, a requirement that does not exist under Intel, but exists under a Second Circuit case decided 10 years before Intel, shifted the analysis from narrow legal categories to a flexible issue of discretion. And not only that, but then refusing to engage in any inquiry with respect to the reasons why, having said that this is discoverable under Hong Kong law, the request was not made in Hong Kong by Ms. O'Keefe for permission to engage in that type of discovery in the United States. We have already said in Deere that that's not a proper focus for district courts. It would exceed, in fact, Section 1782's proper scope and liberality. Well, the Deere case was decided again before Intel. The Deere case was dealing with the question of, I believe, admissibility, not the question of discoverability. And in Intel... There's language in Intel that contradicts what I've just said. I believe that in Intel the focus is on, has there been some attempt to circumvent limitations on the forum state's fact-finding process? And I believe that Intel makes that a factor for discretion. The Intel factors are not mandatory factors. They are not exclusive factors. But they are to guide the exercise of discretion under the touchstone of comity, as set forth in Justice Ginsburg's opinion of the court. Mr. Beyer, thank you very much. Thank you both for your excellent arguments. And we'll take the case under consideration and call the next matter, the case that was...